## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case #09-81290-CIV-RYSKAMP/VITUNAC

Janet Brush,

      Plaintiff,

vs.

Sears Holdings Corporation
d/b/a Sears, Roebuck & Co.,

      Defendant.

_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION TO STRIKE

THIS CAUSE comes before the Court pursuant to Defendant Sears Holdings Corporation d/b/a Sears, Roebuck & Co.'s ("Defendant" or "Kmart"[1]) motion for summary judgment, filed October 1, 2010 **[DE 33]**.  Plaintiff Janet Brush ("Plaintiff") responded on October 21, 2010 **[DE 39]**.  Kmart replied on November 8, 2010 **[DE 45]**.  This cause is also before the Court pursuant to Plaintiff's motion to strike, filed October 22, 2010 **[DE 40]**.  Kmart responded on November 8, 2010 **[DE 46]**.  Plaintiff replied on November 18, 2010 **[DE 48]**.  The Court held a hearing on these motions on December 8, 2010.  This motion is ripe for adjudication.

---

[1] Kmart is a subsidiary of Sears Holdings Corporation.

# I.   BACKGROUND

## A.   General Information Regarding Plaintiff's Employment

Plaintiff worked at Kmart as a Loss Prevention District Coach ("LPDC").[2]  Plaintiff was responsible for minimizing risk to the company.  Among other duties, Plaintiff was responsible for controlling shrink (e.g., external and internal theft) and protecting Kmart's assets (e.g., people, facilities, and merchandise).  Between the years 2000 and 2006, Plaintiff was responsible for loss prevention in approximately 10 stores in Florida.  Plaintiff aspired to become a Regional Loss Prevention Manager.  Toward that end, in 2006, Plaintiff accepted a position as the LPDC over a 20-store district, which she held until her employment was terminated.  Plaintiff reported to Regional Loss Prevention Coach ("RLPC"), David Pearson ("Pearson"), who, in turn, reported to Regional Loss Prevention Director, Robert Church ("Church").

In 2006, Plaintiff had a number of performance deficiencies which were documented in her year-end performance review.  Plaintiff's performance deficiencies included poor shrink results for her district, poor inventory preparation, poor market control, poor staffing, poor follow- up and poor time management.  In early 2007, Plaintiff was placed on a Performance Improvement Plan (PIP) because of these deficiencies.  Plaintiff's PIP was extended to 120 days to ensure that she was meeting all of the criteria for her position.  Plaintiff completed her PIP on approximately September 20, 2007.

Plaintiff failed to sustain sufficient performance improvement, and her supervisors determined that her termination was warranted.  In early November 2007, Pearson sent a

---

[2] Plaintiff maintains she worked for Kmart since 1992 and began working as a LPDC in 2000.  Kmart maintains that Plaintiff began working for Kmart in 2000.  This factual dispute is immaterial; Plaintiff worked as an LPDC during the relevant time period.

memorandum to Church and Shelly Arnold ("Arnold"), the Human Resources Manager for Kmart Loss Prevention, in which he outlined Plaintiff's ongoing performance deficiencies and recommended termination.  On November 10, 2007, Pearson submitted his revised memorandum to Arnold for review.  The performance issues identified by Pearson included: 1) unacceptable levels of shrink in Plaintiff's district; 2) sloppy and unprofessional handling and follow up on the placement of a loss prevention employee whose background check included disqualifying information, which was met with sharp criticism from the company's Human Resources Compliance Team; 3) failure to perform adequate store visits; 4) failure to train store Loss Prevention Coaches (LPCs) and ensure timely completion of corporate initiatives; 5) poor communication with her supervisor; 6) failure to timely complete a children's toy recall; and 7) Plaintiff's poor judgment and failure to follow-up regarding an internal sexual harassment investigation.  Kmart determined that Plaintiff's ongoing performance problems and the unwanted risks associated with them warranted termination.  Plaintiff's employment was terminated on November 20, 2007.

Plaintiff claims she was terminated in retaliation for her participation in the sexual harassment investigation and for her opposition to alleged violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.* and the Florida Civil Rights Act ("FCRA"), Fla. Stat. § 760.01, *et seq*.

**B.     The Sexual Harassment Investigation**

Kmart evidently has its loss prevention department play a role in internal sexual harassment investigations.  On September 15, 2007, Plaintiff received a call on her cell phone

4

from an assistant store manager ("complainant") who alleged that she had been sexually harassed by her store manager.  The complainant stated that the manager had been sending inappropriate text messages to her cell phone.  The complainant also disclosed to Plaintiff that complainant's husband found her cell phone and saw the text messages from the manager.  The complainant made no mention of any sexual encounter with the manager, consensual or otherwise.

Plaintiff communicated the complaint to Regional Manager Dave Rodney ("Rodney") and to Pearson.  Keith Johnson ("Johnson"), the Divisional Loss Prevention Director, emailed to Plaintiff and District Coach Scott Reuter ("Reuter"), Plaintiff's operations counterpart, the company's sexual harassment investigation packet, which contained forms and instructions on how to conduct investigations.

On September 16, 2007, Plaintiff and Reuter were instructed to travel to the store at issue and to suspend the alleged harasser.  Plaintiff and Reuter were next instructed to meet with the complainant's husband.  During that meeting, Plaintiff did not inquire as to the circumstances under which he either came upon the text messages or possessed his wife's cell phone.  After meeting the complainant's husband, Church and Johnson instructed Plaintiff and Reuter to return to the store and further investigate the allegations.  Reuter interviewed witnesses from the forms provided in the investigative packet.  Plaintiff acted as note-taker during the interviews.

Reuter and Plaintiff interviewed the complainant first.  Plaintiff later interviewed the complainant in private, after which she informed Church that the complainant had been raped and that law enforcement should be contacted.[3]  Plaintiff made that recommendation without

---

[3] Exactly what occurred during this interview is in dispute.  Plaintiff maintains that the complainant volunteered that she had been raped.  Kmart maintains that Plaintiff suggested to the complainant that the complainant had been raped.  What did or did not occur during this interview was not the exclusive basis for the

having  reviewed the store's surveillance video, having spoken with the manager or other fact witnesses, or having made any effort to obtain details from the complainant regarding the alleged rapes or otherwise test the veracity of those new allegations.  Church asked Plaintiff to refrain from contacting the police until he sought guidance from the company's legal department.

Plaintiff  was instructed to obtain copies of relevant surveillance footage from the store. Plaintiff delegated this task to Lisa Murphy, the store's LPC, who was not only the store manager's subordinate but also a fact witness in the investigation.  Additionally, Plaintiff failed to ensure that the video was properly annotated and never reviewed the footage before it was sent to the corporate office for analysis.

The store manager eventually admitted to a consensual affair with complainant.  His employment was terminated, and the complainant was transferred to another store.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(c) requires entry of summary judgment when the pleadings, depositions, and affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Summary judgment should be granted when the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party.  *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513 (1986).  The non-moving party must go beyond the pleadings and present affirmative evidence showing that there is a genuine issue of material fact for trial.  *Id*. at 252, 106 S.Ct. at 2512.  It is not sufficient for the non-moving party

---

decision to terminate Plaintiff's employment, however.

to show a mere "scintilla" of evidence, or evidence that is merely colorable or not significantly probative, in support of its position.  *Id*.  Additionally, conclusory allegations and conjecture are not sufficient to overcome a motion for summary judgment.  *See Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996).

Plaintiff's claims are subject to the three-part allocation of proof established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 1824-25 (1973).  If Plaintiff can establish a *prima facie* case of unlawful retaliation, the burden shifts to Kmart to articulate a legitimate, non-retaliatory reason for the challenged employment actions.  *See Hanley v. Sports Auth.*, 143 F.Supp.2d 1351, 1356 (S.D. Fla. 2000).  If Kmart does so, Plaintiff must show that Kmart's proffered reasons are a mere pretext for discrimination by pointing to concrete evidence in the form of specific facts discrediting Kmart's proffered reason for the challenged employment action.  *See Mayfield*, 101 F.3d at 1376.

To establish a *prima facie* claim of retaliation under Title VII and the FCRA, Plaintiff must prove that: (1) she engaged in "protected activity"; (2) she suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action.  *Brown v. Snow*, 440 F. 3d 1259, 1266 (11th Cir. 2006); *Harper v. Blockbuster Entertainment Corp.*, 139 F.3d 1385, 1389 (11th Cir. 1998)("decisions construing Title VII guide the analysis of claims under the [FCRA]").

### III.    <u>ANALYSIS</u>

**A.    Protected Activity**

Title VII provides that:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).  Statutorily protected activity is limited to where an employee: a) has made a charge, testified, assisted or participated in any manner in an investigation, commonly known as the "participation clause"; or b) has opposed any practice made unlawful by Title VII, commonly known as the "opposition clause."  *Id.*

Plaintiff originally attempted to invoke protection under both the participation and the opposition clauses.  Plaintiff alleges that her "participation" in the internal investigation affords her protection under Title VII's "participation clause."  Plaintiff also invokes protection under the "opposition clause" by claiming that she "opposed" the manner in which Kmart conducted its internal investigation.  More specifically, Plaintiff claims that her termination was motivated by her disagreement with Kmart's decision not to immediately summon local law enforcement to independently investigate the allegations.  Plaintiff's claims, even if true, do not constitute statutorily-protected activity under either clause of the anti-retaliation statutes.

Plaintiff concedes in her response that she cannot rely on the participation clause.  The participation clause applies only to "proceedings and activities which occur in conjunction with or after the filing of a formal charge with the EEOC; [and] does not include participating in an

employer's internal, in-house investigation, conducted apart from a formal charge with the

EEOC." *EEOC v. Total Syst. Svcs., Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000), *reh'g en banc*

*denied* 240 F.3d 899 (11th Cir. 2001).  As Plaintiff's participation was in connection with

Kmart's internal investigation, the participation clause does not apply.

Plaintiff's disagreement with Kmart's decision not to immediately summon local law

enforcement does not constitute protected activity under the opposition clause.  To constitute

protected activity under this clause, the conduct being opposed must be a "practice made

unlawful by [Title VII]."  42 U.S.C. § 2000e-3(a); *see also* Fla. Stat. § 760.10(7) ("it is an

unlawful employment practice for an employer... to discriminate against any person because that

person has opposed any practice which is an unlawful employment practice under this section").

While a plaintiff need not prove that the employer's conduct was actually unlawful, the

allegations and record must also indicate that the belief, though perhaps mistaken, was

objectively reasonable.  *Little v. United Techs. Carrier Transicold Div.*, 103 F. 3d 956, 960 (11th

Cir. 1997) (holding that a plaintiff must show both a subjective belief that the employer engaged

in an unlawful employment practice and that the belief was objectively reasonable) .  Whether

the belief is objectively reasonable is measured against existing substantive law.  *Clark County*

*School District v. Breeden*, 532 U.S. 268, 269, 271, 121 S.Ct. 1508, 1509-10 (2001) (holding that

exposure to one sexist remark is insufficient to constitute sexual harassment).

Plaintiff cannot establish that she engaged in activity protected by the opposition clause.

Kmart's decision to conduct additional investigation and to consult with its legal department

before acting on Plaintiff's recommendation to call law enforcement is not an employment

practice "made unlawful" under either Title VII or the FCRA.  These statutes do not dictate how

an employer must conduct internal investigations of discrimination claims. "Title VII does

not...establish requirements for an employer's internal procedures for receiving sexual

harassment complaints, or even require that employers must have an internal procedure for

receiving such complaints." *Entrekin v. City of Panama City*, 376 Fed.Appx. 987, 994 (11th Cir.

2010) (holding that plaintiff did not engage in protected activity because plaintiff's complaint

involved adequacy of defendant's internal procedure for receiving sexual harassment complaints,

rather than an employment practice that Title VII declares to be unlawful). *See also Baldwin v.*

*Blue Cross/Blue Shield of Alabama*, 480 F.3d 1287, 1304 (11th Cir. 2007) (noting that a

company need not "conduct a full-blown due process, trial-type proceeding in response to

complaints of sexual harassment. All that is required of an investigation is reasonableness in all

of the circumstances, and the permissible circumstances may include conducting the inquiry

informally in a manner that will not unnecessarily disrupt the company's business, and in an

effort to arrive at a reasonably fair estimate of truth").

 Not only was there no legal requirement for Kmart to contact law enforcement under the

facts of this case, but the undisputed evidence demonstrates that it would have been

inappropriate to do so. The complainant specifically told Plaintiff that she did not want law

enforcement or her husband involved in the matter. When Plaintiff urged Kmart to call the

police she had done nothing to test the rape allegations. Plaintiff had not obtained any details

from the complainant regarding the allegations, had not reviewed surveillance video that might

have shed light on the veracity of complainant's allegations, had not yet questioned the accused

store manager and had not explored whether the sexual encounter was consensual.

 Plaintiff's disagreement with Kmart's decision to investigate further before contacting

law enforcement is not "opposition to conduct made unlawful" under Title VII and, to the extent Plaintiff subjectively believed it was, her belief was not objectively reasonable as measured against existing substantive law.  *See Little*, 103 F.3d at 960 (affirming summary judgment for employer where Plaintiff did not have an objectively reasonable belief that his complaint constituted opposition to an unlawful employment practice).  Thus, Plaintiff cannot establish that she engaged in statutorily protected activity under Title VII or the FCRA.

Even if the recommendation to contact law enforcement constituted protected activity, Plaintiff's claims would still fail because her recommendation occurred during the course of the performance of her job as LPDC investigating an internal complaint.  Although the Eleventh Circuit has yet to address this issue, other courts have held that a management employee who disagrees with or opposes his employer's decisions is not engaging in protected activity if the employee is merely performing her job.  *McKenzie v. Renberg's Inc.*, 94 F.3d 1478, 1486 (10th Cir. 1996) (judgment against personnel director who claimed termination was in retaliation for reporting overtime violations and informing her employer she thought it was at risk for claims by others because she was performing her job because she "never crossed the line from being an employee merely performing her job as personnel director to an employee lodging a complaint about the wage and hour practices of her employer and asserting a right adverse to the company"); *Hagan v. Echostar Satellite, L.L.C.,* 529 F.3d 617, 630-31 (5th Cir. 2008)(affirming judgment for employer where manager was not personally advocating on behalf of his technicians' statutory rights under the FLSA but merely relayed their concerns about their schedules; he did not "step outside the role" of manager so as to engage in a protected activity under the FLSA); *Vidal v. Ramallo Bros. Printing, Inc.*, 380 F.Supp.2d 60, 62 (D. P.R. 2005)

(rejecting Title VII retaliatory discharge claim of human resources director who advised the company president and vice-president that he was investigating sexual harassment claims against them as plaintiff's actions were part of his job responsibilities).

As the LPDC for the store in question, Plaintiff received the complaint and thereafter was assigned to investigate same. Plaintiff and Reuter traveled to the store, suspended the store manager, and conducted interviews of the parties and all fact witnesses. Plaintiff's recommendation to summon law enforcement was consistent with her investigative authority. The packet Johnson emailed to Plaintiff and Reuter specifically instructed investigators to consider whether interim actions should be taken during an investigation, such as "Should the Law Department be involved?" and "Should law enforcement be alerted?" (Pl. Dep., Exh 2, p. 5.) Thus, Plaintiff's recommendation that Kmart contact law enforcement was consistent with both her role as an investigator in the investigation and Kmart's written investigative guidelines. Because Plaintiff stayed within her role of representing Kmart, she was not taking action adverse to Kmart.

Plaintiff also claims that Kmart terminated her because she "challenged" Kmart's decision to hide the complainant from view of the alleged harasser when he arrived at the store to meet with corporate officials. Plaintiff cites no record evidence to support this claim, and her deposition testimony actually contradicts it. Plaintiff testified that she complied with the request to move the complainant from the store manager's view. Additionally, Plaintiff has offered no legal authority to establish that secluding a complainant from an alleged harasser under these circumstances is an unlawful employment action under Title VII.

Plaintiff's allegation that she "disapproved" of the store manager's alleged rape is

meaningless.  Plaintiff was not reporting something she personally observed at Kmart, and she rushed to conclude that the complainant had been "raped."  Plaintiff's implication that those involved in the investigation (including the complainant) who did not endorse her recommendation to summon law enforcement must, therefore, "approve" rape, is nonsensical.[4]

Plaintiff cites *Crawford v. Metropolitan Government of Nashville and Davidson Division*, 129 S.Ct. 846 (2009) for the proposition that the "opposition clause," unlike the participation clause, can be triggered even when no EEOC claim is pending.  Defendant has not argued otherwise.  In any event, *Crawford* is factually distinguishable.  At issue in *Crawford* was whether a fact witness engaged in protected activity when she provided information adverse to the employer when questioned during an internal harassment investigation.  *Id.* at 850-51.  The fact witness in *Crawford* alleged that she herself was subjected to harassment by the alleged harasser.  *Id.*  Here, Plaintiff was not a fact witness reporting facts that she personally observed.  Rather, Plaintiff was an investigator who merely relayed to her superiors secondhand information obtained during the investigation.  Contrary to Plaintiff's suggestion, *Crawford* did not address, let alone modify, the long line of cases that preclude a finding of protected activity when the activity occurs in the course of performing one's job duties.

Plaintiff also cites *Collazo v. Bristol-Myers Squibb Mfg.*, 617 F.3d 39 (1st Cir. 2010), a post-*Crawford* decision in which the court applied the "manager's role" standard to a plaintiff/scientist's opposition-based retaliation claim.  The court concluded that the plaintiff/scientist stepped out of his role because he assisted a subordinate with filing and

---

[4] Indeed, Plaintiff's counsel stipulated at oral argument that Kmart disapproves of rape in the workplace. The Court never doubted that such was the case.

pursuing an internal discrimination complaint. *Id.* at 49. The plaintiff/scientist also reported his own observations of harassing conduct by the alleged wrongdoer. *Id.* at 43-44. *Collazo* acknowledged *Crawford* for its clarification as to the types of communication that could constitute oppositional activity, but it did not interpret *Crawford* as altering the rule that forecloses oppositional activity claims by managers who are simply performing their duties. *Id.* at 42, 49.

 *Schanfield v. Sojitz Corp of Am.*, 663 F.Supp.2d 305 (S.D.N.Y. 2009), another case Plaintiff cites, is also inapposite. In *Schanfield*, the court found that the plaintiff/auditor stepped outside his role after he continued to raise perceived discriminatory aspects of a rotational system after being told not to do so. *Id.* at 317. As in *Collazo*, the auditor was relaying first-hand information. *Id.* at 315-16.

 Plaintiff was not reporting discriminatory conduct that she personally observed. Instead, Plaintiff was simply relaying to her superiors the allegations and facts obtained from others during the course of her investigation. Application of the "manager rule" in this case is consistent with applicable precedent.

## B. Causal Connection

 Even if Plaintiff could establish that she engaged in statutorily protected activity, her claims would still fail because she cannot establish that there was a causal connection between her protected activity and her termination.

 Plaintiff maintains that Pearson told her that she was terminated for violation of the policy for conducting internal sexual harassment investigations. There is no merit to Plaintiff's

contention that the necessary causal connection is satisfied because Pearson suggested to her that she was terminated for violating investigative policy.  Although there were numerous performance deficiencies supporting the decision to terminate, Kmart's concerns about Plaintiff's role in the investigation were unrelated to her request to summon law enforcement.  The termination memorandum, as well as Plaintiff's sworn testimony, makes clear that Kmart was dissatisfied with the manner in which the rape allegation surfaced and Plaintiff's apparent indifference to her superiors' request that she provide them with relevant and adequately labeled store surveillance footage.  These issues relate to Plaintiff's judgment and failure to follow proper investigative procedures, which are legitimate business concerns that have nothing to do with statutorily protected activity.  As such, Plaintiff cannot establish a "causal connection" between statutorily protected activity and her termination.

Plaintiff's reliance on her tenure with the Company and her removal from her PIP do not establish the necessary causal connection.  The record reveals that, after she was removed from the PIP, Plaintiff reverted to the same performance level that led to her PIP in the first place.  In either event, many of the performance deficiencies that led to her termination occurred after her role in the investigation ended.  These deficiencies, therefore, were intervening events that would have broken any causal chain between her alleged "protected activity" and her termination.

**C.      Legitimate, Non-Discriminatory Basis for Employment Decision**

Assuming Plaintiff could establish a *prima facie* case of retaliation, Kmart has satisfied its burden of articulating legitimate, non-retaliatory reasons for its decision to terminate Plaintiff's employment.  Kmart's termination memorandum identified several performance

deficiencies, all of which contributed to Plaintiff's termination of employment.  Plaintiff admits that time management was a challenge for her, which affected her ability to meet Kmart's expectations.  Plaintiff ranked among the lowest loss prevention coaches in terms of shrink percentages, and her inattention to detail and failure to follow up on job assignments exposed Kmart to significant exposure.  Not only did she exhibit questionable judgment in the investigation at issue, but she: 1) had unacceptable levels of shrink; 2) demonstrated sloppy and unprofessional handling and follow up on the placement of a loss prevention employee whose background check included disqualifying information (for which she was sharply criticized by the company's Human Resources Compliance Team); 3) failed to perform adequate store visits; 4) failed to train Store LPCs and ensure timely completion of corporate initiatives; 5) had poor communication with her supervisor; and 6) failed to timely complete a children's toy recall that posed safety risks to children.

**D.      Pretext**

Because Kmart has met its burden of articulating legitimate reasons for its decision to terminate, Plaintiff is required to establish that Kmart's stated reasons are pretextual.  *Combs v. Plantation Patterns*, 106 F.3d 1519, 1543 (11th Cir. 1997) ("a plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason, at least not where, as here, the reason is one that might motivate a reasonable employer").

Plaintiff cannot establish that Kmart's reasons are pretextual.  The performance problems that contributed to Plaintiff's termination arose long before the sexual harassment investigation, and those problems were of such concern that Kmart placed her on a PIP.  Unfortunately, Plaintiff failed to maintain an acceptable level of performance after she was removed from the

PIP.  Kmart determined that termination was in order because of her persistent inattention to detail, "sloppiness," and time management problems.

Further, Kmart's concerns were not unique to Plaintiff.  The evidence establishes that Kmart terminated at least one other LPDC for similar reasons and had been critical of others in the past who did not follow proper investigative protocol.  Thus, the decisions at issue were consistent with Kmart's past practice.  Because Plaintiff cannot establish that the reasons supporting Kmart's decision were pretextual, she cannot establish an actionable retaliation claim as a matter of law.

Plaintiff maintains that Kmart never discussed her performance deficiencies with her. The record does not support this contention.  Plaintiff does not deny the numerous performance problems identified in the termination memo, and the record reflects that many, if not all, of those issues were communicated to her during her employment.  Plaintiff, for example, testified that she was aware that Kmart officials were very upset with her handling of the hiring of an employee who had disqualifying information on his record, that Pearson was frustrated with her untimely completion of projects and that Pearson may likely have spoken with her about other concerns, including her failure to ensure her stores had removed out-of-date merchandise and the haphazard way she conducted her store visits.  Many of these issues had previously been brought to her attention and were documented in her PIP.

Though there are several examples of performance deficiencies identified in the record, Plaintiff only defends her decision to meet privately with the complainant during the investigation.  Plaintiff claims that Kmart's investigative policies allowed for private meetings with fact witnesses.  A more complete examination of the record, however, establishes that her

decision to meet alone with the complainant exhibited poor judgment.  Plaintiff, who claims that her role was "note-taker" and that she and Reuter were taking instruction from Kmart officials during the investigation, initiated a private meeting with the complainant despite Plaintiff's acknowledgment that she had no experience with sexual harassment investigations.  Plaintiff's conduct in the investigation contributed to her termination not because of any alleged "protected activity," but because of legitimate concerns regarding her failure to follow proper investigative technique and poor decision-making.  Plaintiff herself has terminated Kmart employees for similar reasons.

Plaintiff next attempts to "excuse" herself from Kmart's performance standards because she worked a dual territory.  Others at Kmart worked dual territories, however, and Plaintiff voluntarily accepted the dual market because she perceived it as a stepping stone to promotion.  Moreover, the record establishes that Kmart has consistently enforced its performance standards and terminated at least one other LPDC for failure to adhere to the performance standards.

Plaintiff's citation to a few favorable comments contained in her 2006 performance evaluation does not change the result.  That Plaintiff's older evaluations included both positive and negative feedback does not establish "inconsistency" in Kmart's position.  The inclusion of positive and negative feedback shows that her performance evaluations were balanced.

Plaintiff's reference to an unrelated case against Kmart in Pennsylvania is baffling because she does not explain how it is relevant to this case.

Plaintiff's claim that Kmart was "angry" with her uncovering of the alleged rapes also is contradicted by her own testimony.  Plaintiff testified that, throughout the investigative process, those who coordinated and monitored the investigation dealt with her in a professional manner

and did or said nothing Plaintiff found offensive.  Plaintiff concedes that she probably should have had a witness present when she met privately with the complainant and was not educated enough to know whether there was enough evidence to contact law enforcement.  Plaintiff also acknowledged that perhaps she failed to appreciate that her superiors were doing their jobs and were working with a sense of urgency.

Plaintiff's alleged confusion about Kmart's position on the identity of "the decision-maker" is disingenuous.  The process for terminating the employment of someone at Plaintiff's level extends across different hierarchal levels.  Church testified that the termination process for someone at Plaintiff's level incorporates safeguards and multiple levels of review.  Church explained that Pearson's decision to recommend termination would be reviewed by Arnold, who, if she agreed, would approve the termination and submit it for review to the corporate team, including Tom Arigi and the V.P. of Loss Prevention, Bill Titus.  Plaintiff fails to explain how this so-called conflict is relevant to this case.  Kmart does not defend on the ground that the "decision-maker" was unaware fo the alleged protected activity.

As noted, Plaintiff maintains that Pearson told her that she was terminated for violation of the policy for conducting internal sexual harassment investigations.  When Pearson spoke with the EEOC and when he subsequently gave his declaration to Plaintiff, he acknowledged that Kmart had concerns about his performance and already had terminated his employment.  Pearson's declaration and statements to the EEOC do not constitute party-admissions and are therefore not binding on Kmart.  *See* F.R.E. 801(d)(2).

Though Pearson now claims that he did not recommend Plaintiff's termination and believes her termination was unwarranted, his input and the documents he authored formed part

of the basis for the decision to terminate Plaintiff's employment.  Though Plaintiff claims that

some of the documents appear "suspect and seemingly altered," or are "bizarre" because written

in different tenses, it is significant that, in his declaration dated October 21, 2010, Pearson did

not: 1) disavow his authorship of these documents; 2) distance himself from the statements and

representations he made in those documents; or 3) support Plaintiff's unfounded allegations that

Kmart "doctored" or altered documents – even though the documents were in Plaintiff's hands

long before Pearson signed his declaration.

Finally, Plaintiff seeks to exclude some of the documentary evidence that she otherwise

cannot overcome.  Plaintiff's claim that she was "blind-sided" by certain documents not only

lacks substantive merit, but she has not explained why she made no issue of these documents

from the time they were served on August 24, 2010, to the filing of her Opposition on October

21, 2010.  If Plaintiff truly believed she was unduly prejudiced by these documents, then she

should have either filed a timely motion to strike and/or sought Kmart's agreement or,

alternatively, leave of court, to re-open discovery for the limited purposes of conducting any

necessary follow-up.

The documents at issue either were duplicative of documents previously produced to

Plaintiff, not responsive to Plaintiff's discovery and/or add nothing substantive to the case.

Plaintiff takes issue with Exhibit D to Arnold's declaration, Pearson's termination memo, but

that document was previously produced to Plaintiff on January 25, 2010.  Exhibit C to Arnold's

declaration is an email from Pearson to Arnold attaching his first draft of the termination memo.

The draft is not only is less-inclusive than the final version of the memo, but Kmart voluntarily

produced the draft after Church's deposition because it tended to dispel Plaintiff's suggestion

that Kmart had created the termination memo after her termination on November 20, 2007 – an issue Plaintiff had not previously raised in discovery. This document merely details Plaintiff's myriad performance issues. Exhibit E to Arnold's declaration establishes that these performance issues were identified prior to Plaintiff's termination.

Plaintiff's attempt to exclude comparative data identified in Exhibit A to Human Resources Director Chris Jemo's declaration is equally without merit. This document summarizes disciplinary action taken against Reuter for failure to perform an appropriate investigation, merely underscoring that Kmart takes seriously failure to follow investigative procedure.

Exhibits A-C to Church's declaration add nothing substantively to the case and were voluntarily produced after Church's deposition simply to clarify issues that had arisen during his deposition. These documents detail Plaintiff's performance deficiencies, including her failure to follow proper hiring procedure. In either event, Church's attestations in the declaration and the record as a whole are more than sufficient to support the entry of summary judgment.

The undisputed record evidence establishes that Kmart is entitled to summary judgment in this action. Plaintiff cannot establish "protected activity" or that Kmart's reasons for its decision to terminate Plaintiff's employment are pretextual. Rather, the facts show that Plaintiff was terminated because of performance deficiencies that surfaced prior to her alleged protected activity and that other associates have been terminated for similar reasons.

## IV.    <u>CONCLUSION</u>

THE COURT, being fully advised and having considered the pertinent portions of the

record, hereby

ORDERS AND ADJUDGES that Defendant's motion for summary judgment, filed

October 1, 2010 **[DE 33]**, is GRANTED.  It is further

ORDERED AND ADJUDGED that Plaintiff's motion to strike, filed October 22, 2010

**[DE 40]**, is DENIED.  Final judgment shall be entered by separate order.

DONE AND ORDERED at Chambers in West Palm Beach, Florida, this 14th day of

January, 2011.

S/Kenneth L. Ryskamp
KENNETH L. RYSKAMP
UNITED STATES DISTRICT JUDGE